Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Kimberly Corona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Corona,<br><br>            Plaintiff,<br><br>     v.<br><br>The Standard Insurance Company; Arizona State Credit Union; Arizona State Credit Union Disability Plan,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Kimberly Corona (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Arizona State Credit Union (hereinafter referred to as the "Company") sponsored, administered and purchased a group short term disability insurance policy which was fully insured by The Standard Insurance Company (hereinafter referred to as "Standard"). The specific group short term disability insurance policy is known as group policy number 148504-B (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide short term disability insurance for its employees. Upon information and belief, the Standard Policy may have been included in and part of an employee benefit plan, specifically named the Arizona State Credit Union Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Standard functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Standard.

5. Standard had an inherent conflict of interest in evaluating Plaintiff's short term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether she was disabled, as well as the payor of benefits if it determined Plaintiff was disabled.

6. The Company, Standard and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks short term disability (STD) benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as long term disability (LTD) benefits from the relevant Plan and Policy and any other employee benefits she may be entitled to from the Company, the Plan and any other Company Plan as a result of being found disabled in this action.

9. With regard to her claim for LTD benefits, Plaintiff seeks a determination that she is disabled and also meets the definition of disability set forth in the LTD Policy which contains essentially the same definition as is set forth in the STD Policy. Plaintiff's eligibility to receive LTD benefits is ripe before this Court to make a determination as her disability and inability to work have continued to exist throughout the STD timeframe, through the LTD timeframe and to the present date. All of the evidence Plaintiff submitted to Standard in her STD claim proves that she also meets any definition of disability in the relevant LTD Plan and/or Policy.

10. In the alternative, with regard to her LTD claim, Plaintiff's seeks a determination in this action that she is eligible to file an LTD claim and to have Standard

1 determine whether she is entitled to receive LTD benefits pursuant to that Plan and/or
2 Policy as a result of being found disabled for the entire STD timeframe in this action.

3      11. After working for the Company as a loyal employee, Plaintiff became
4 disabled on or about June 25, 2014, due to serious medical conditions and was unable to
5 work in her designated occupation as an Administrative Clerk III. Plaintiff has remained
6 disabled as that term is defined in the relevant Policy continuously since that date and has
7 not been able to return to any occupation as a result of her serious medical conditions.

8      12. Following her disability, Plaintiff filed a claim for STD benefits under the
9 relevant Policy which was administered by Standard, meaning that it made the decision with
10 regard to whether Plaintiff was disabled.

11      13. The Standard Policy provides the following definition of disability pertaining
12 to STD benefits:

> You are Disabled if you meet the following Own Occupation definition of Disability.
>
> You are required to be Disabled only from your Own Occupation. You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:
>
> 1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and
> 2. You suffer a loss of at least 20% in your Pre-disability Earnings when working in your Own Occupation.

20      14. In support of her claim for STD benefits, Plaintiff submitted to Standard
21 medical evidence which supported her allegation that she met the definition of disability as
22 defined in the relevant Policy.

-4-

15. In a letter dated September 30, 2014, Standard informed Plaintiff it was denying her claim for STD benefits. Plaintiff alleges that in denying her claim, Standard's decision abused any discretion that may have been afforded to it in the Policy.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Standard's September 30, 2014 denial of her claim and in support of her claim for STD benefits, Plaintiff submitted to Standard additional medical, vocational and lay-witness evidence demonstrating she met the definition of disability set forth in the Policy.

17. Plaintiff submitted to Standard a January 7, 2015 narrative letter from her board certified treating physician who confirmed it is his medical opinion, "…[Plaintiff] has not been able to work in any capacity since 07/07/2014. The medical conditions that support this will continue indefinitely. She will not be able to work in any occupation indefinitely."

18. Plaintiff also submitted to Standard a Functional Capacity Evaluation report dated November 12, 2014, wherein after an extensive several hour test and evaluation with a qualified physical therapist to determine her ability to work, the therapist concluded, "…[Plaintiff] is unable to perform any categorical work at this time, even ***sedentary***." (original emphasis).

19. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated March 27, 2015, who after reviewing Plaintiff's medical evidence, the definition of disability and interviewing Plaintiff, they concluded, "…it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] meets the own occupation Definition of Disability in The Standard policy and she is entitled to disability benefits on that policy."

20.     In addition to the medical evidence and reports submitted to Standard, Plaintiff submitted a sworn affidavit from her mother, who confirmed Plaintiff is unable to work in any occupation and that her medical condition has not improved in any way since her date of disability.

21.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they would have on her ability to work in any work environment.

22.     As part of its review of Plaintiff's claim for STD benefits, Standard obtained medical records only "paper reviews" from two physicians of its choosing. Standard did not disclose to Plaintiff the name of its reviewing physicians, either during its administrative review of Plaintiff's claim or after the final determination had been made.

23.     Upon information and belief, Plaintiff alleges the reviewing physicians may be long time medical consultants for the disability insurance industry and/or Standard. As a result, Plaintiff alleges the reviewing physicians may have incentives to protect their own consulting relationships with the disability insurance industry and/or Standard, by providing medical records only paper reviews which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

24.     In a letters dated April 15, 2015 and June 2, 2015, in order to engage Standard in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Standard and the opportunity to respond to these reviews as well as to provide them to her treating physicians for their response prior to Standard rendering a determination in her claim.

25. Prior to rendering its final denial in Plaintiff's claim, Standard never shared with Plaintiff the reports authored by its reviewing physicians and never engaged Plaintiff or her treating medical providers in a dialogue so she could respond to the reports and perfect her claim. Standard's failure to provide Plaintiff with the opportunity to respond to the reports precluded a full and fair review pursuant to ERISA. Standard's action is also an ERISA procedural violation and a violation of Ninth Circuit case law.

26. In a letter dated July 20, 2015, Standard notified Plaintiff it had again denied her claim for STD benefits under the Policy. In the letter, Standard also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA. Plaintiff alleges that Standard's decision to again deny her claim abused any discretion that may have been afforded to it in the Policy.

27. Upon information and belief, Standard's July 20, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved she was disabled and met the definition of disability in the policy.

28. In evaluating Plaintiff's claim on appeal, Standard owed her a fiduciary duty and had an obligation pursuant to ERISA to administer her claim, "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim

29.     Standard failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Standard's failure to investigate the claim and to engage in this dialogue and to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law, and is a reason she did not receive a full and fair review.

30.     Plaintiff alleges Standard provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, failing to adequately investigate her claim; failing to have her personally examined by a medical professional when the policy allowed for one; failing to credit Plaintiff's reliable evidence; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical/vocational evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

31.     Plaintiff alleges a reason Standard provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due in part to its conflict of interest that manifested as a result of the dual roles Standard undertook

---

denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  as the decision maker and payor of benefits.  Standard's conflict of interest provided it with motivation and a financial incentive to deny her claim.

32. Plaintiff is entitled to discovery regarding Standard's aforementioned conflicts of interest, potential conflicts of interest of the reviewing physicians, as well as any other individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Standard's decision to deny her claim.

33. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Standard as referenced herein are so flagrant they justify *de novo* review.

34. As a direct result of Standard's decision to deny Plaintiff's STD claim, she has been injured and suffered damages in the form of lost STD benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include but not be limited to, long term disability benefits (LTD), health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

35. As referenced *supra,* pursuant to ERISA 29 U.S.C. §1132(a)(1)(B), in addition to seeking a determination in this action that she met the definition of disability and was disabled throughout the entire STD timeframe and is entitled to all those benefits, Plaintiff seeks a determination that she is disabled and also meets the definition of disability

1  set forth in the LTD Policy which contains essentially the same definition as is set forth in
2  the STD Policy. Plaintiff's eligibility to receive LTD benefits is ripe before this Court to
3  make a determination as her disability and inability to work have continued to exist
4  throughout the STD timeframe, through the LTD timeframe and into the present date. All
5  of the evidence Plaintiff submitted to Standard in her STD claim proves that she also meets
6  any definition of disability in the relevant LTD Plan and/or Policy.

7  36.    In the alternative, with regard to her LTD claim, Plaintiff's seeks a
8  determination in this action that she is eligible to file an LTD claim and to have Standard
9  determine whether she is entitled to receive LTD benefits pursuant to that Plan and/or
10 Policy as a result of being found disabled for the entire STD timeframe in this action.

11 37.    In a letter dated October 27, 2014, Plaintiff notified Standard that she
12 intended to file an LTD claim and requested for Standard to provide her with the necessary
13 LTD application documents. In a letter dated January 12, 2015, as well as in its July 20,
14 2015 final denial, Standard informed Plaintiff she was not eligible to file a claim for LTD
15 benefits until all STD benefits had been exhausted.

16 38.    Plaintiff alleges that a motivating factor in why Standard denied her STD
17 claim is because if it found Plaintiff disabled for the entire STD timeframe and she
18 exhausted those benefits, Standard's financial liability/exposure in Plaintiff's LTD is
19 significantly larger than it is in Plaintiff's STD claim. Plaintiff alleges that but for
20 Standard's unlawful and erroneous denials of her STD claim as referenced herein, she
21 would have exhausted all of her STD benefits. As a result, Plaintiff would have already
22 been eligible for and be receiving LTD benefits at the present time pursuant to the LTD Plan
23 and/or Policy.

39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

40. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her STD benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the STD Plan and/or Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of those benefits;

C. For an Order that Plaintiff is eligible to file a claim for LTD benefits as a result of being found disabled for the entire STD timeframe and exhausting her STD benefits;

D. In the alternative, for an Order that as a result of being found disabled for the entire STD timeframe and exhausting those benefits, Plaintiff is eligible for LTD benefits and the evidence supports a finding that she also meets the definition of disability set forth in the LTD Plan and/or Policy and is entitled to receive LTD benefits along with any other employee benefits that she may be entitled to as a result of being found disabled pursuant to the LTD Plan and/or Policy;

E. For an Order directing Defendants to continue paying Plaintiff the

1 aforementioned LTD benefits and other employee benefits until such time as she meets the
2 conditions for the termination of those benefits;

3     F.     For attorney's fees and costs incurred as a result of prosecuting this suit
4 pursuant to 29 U.S.C. §1132(g); and

5     G.     For such other and further relief as the Court deems just and proper.

DATED this 24th day of September, 2015.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
       Scott E. Davis
       Attorney for Plaintiff

-12-